HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBBIE ESTRADA and TINA ALLEN,

                Plaintiffs,

         v.

SECURITY BARRICADE, INC., a
Washington corporation; LAKESIDE
INDUSTRIES, a joint venture of RED
SAMM MINING COMPANY and BLACK
RIVER SAND & GRAVEL, INC., a
Washington corporation; OSTRANDER
ROCK & CONSTRUCTION COMPANY,
INC., a Washington corporation;
WASHINGTON & NORTHERN IDAHO
DISTRICT COUNCIL OF LABORERS,
LOCAL 791, a labor union organization,

                Defendants.

Case No. C05-5124 RBL

ORDER

## I.     Introduction.

      This matter comes before the Court on Defendant Local 791's Motion for Partial Summary Judgment against Plaintiff Debbie Estrada [Dkt. #59], as well as Defendant Local 791's Motion for Partial Summary Judgment against Plaintiff Tina Allen [Dkt. #62], Defendant Security Barricade's Motion for Summary Judgment against Plaintiff Debbie Estrada [Dkt. #64], Defendant Local 791's Motion to Strike Declarations Re. Plaintiff Estrada [Dkt. #85], Defendant Local 791's Motion to Strike Declarations Re.

1  Plaintiff Allen [Dkt. #91], and Defendant Local 791's Motion to File a Reply Brief [Dkt. #102].

2      This case arises from alleged acts of discrimination by Defendants Washington & Northern Idaho

3  District Council of Laborers, Local 791 ("Local 791"), and Security Barricade, Inc. ("Security Barricade")

4  against Plaintiffs Debbie Estrada ("Estrada") and Tina Allen ("Allen").  The Plaintiff's brought this action,

5  claiming gender discrimination, retaliation, and sexual harassment under Title VII of the Civil Rights Act of

6  1964, 42 U.S.C. § 2000e *et seq*., § 2000e-3(a), and RCW 49.60 *et seq*., as well as a claim for unpaid

7  wages pursuant to RCW 49.52.050.

8      **A.      Facts Pertaining to Estrada.**

9      Plaintiff Estrada is a resident of Kelso, Washington, and is a member, though not an employee, of

10  Local 791 since July 2002.  Local 791 is a labor organization that represents men and women in the

11  construction industry from areas including Longview, Washington.  Local 791 maintains a hiring hall

12  system which is comprised of "A", "B", "C", and "D" out-of-work lists.  Applicants for employment

13  register and re-register on the appropriate list in the order of time and date of registration.  Upon request

14  from employers, Local 791 refers qualified applicants for employment in successive order, first from the

15  "A" list, then from the "B" and "C" lists, and finally from the "D" list.  Those employer requests are filled

16  during the usual course of the hiring hall system, which runs Monday through Friday from 7:30 a.m. to

17  9:00 a.m., and from 4:30 p.m. until 5:00 p.m.

18      Estrada performs work as a flagger (a term used for individuals maintaining traffic on construction

19  sites) and is currently registered on the "C" list.  Estrada was eligible for flagging referrals during the

20  period of July 2002 through October 20, 2004, when, as a result of a work-related injury on a non-union

21  job, Estrada was unable to perform work as a flagger until August 29, 2005.  During her period of

22  eligibility, Estrada was referred six times to employers for flagging referrals.

23      In May 2003, Penny Taylor, another female union member, notified Estrada that she was

24  considering filing a grievance against the Business Agent for the Local 791, Manny Mendez ("Mendez")

25  for discriminatory referencing procedures.  Mendez observed Estrada talking with Ms. Taylor and later

26  questioned her regarding this conversation.  Estrada refused to discuss any of the details of the

27  conversation with Mendez.  Thereafter, Estrada alleges that Mendez dispatched her less frequently even

28  though there was a substantial amount of work available.

In August 2003, Estrada was dispatched to a highway construction project on which Lakeside Industries ("Lakeside") was the general contractor and Security Barricade was the flagging subcontractor. The superintendent on the site directing Estrada and other flaggers was Lakeside employee, Dick Sturm ("Sturm"). While in this position Estrada was repeatedly propositioned by Sturm. On September 25, 2003, approximately one week after Estrada expressed her disinterest in Sturm's propositions, Estrada alleges that Sturm approached her, screaming, clenching his fists, and yelling obscenities at her, claiming that she was improperly delaying traffic. That same day, and in Estrada's presence, Sturm made similar comments to another female flagger, Chris Wixon. Then, at the end of the work day, Estrada saw Sturm talking with Jerry Welch ("Welch") of Security Barricade in an animated manner and pointing in the direction of Estrada and Ms. Wixon. Estrada's employment with Security Barricade was terminated that same day.

On September 26, 2003, Estrada met with Mendez and filed a complaint regarding Sturm's conduct. Mendez initially communicated his disapproval of Sturm's actions to Estrada and stated that he would file a grievance on her behalf. To date, Mendez has not done so. Subsequent to this incident, and to her filing a complaint with the union, Estrada was dispatched only two other times. Additionally, Estrada alleges that she never received payment for two of the days that she worked.

### B.      Facts Pertaining to Allen.

Plaintiff Allen is a resident of Kelso, Washington, and is a member of Defendant Local 791 since approximately August 2002. From this time, through the present, Allen has been dispatched for work by Local 791 only one time. In that instance, which occurred on October 3, 2003, she was dispatched to a job for employer Max J. Kuney ("Kuney"). Allen alleges that once she arrived at the job site, several Kuney employees complained that a female had been dispatched, and Kuney told her that she lacked the required certificates and that she was not qualified for the job. Kuney then sent Allen home, although male union members with the same qualifications remained when she left. This is the only time that Allen has been dispatched for a job since she became a union member nearly three years ago.

Allen also alleges that other male union members who signed up for membership after Allen have been dispatched at a greater rate than Allen, and have moved up the member list, where they will be eligible for increased frequency of dispatch, while Allen has not. Finally, Allen alleges that once she complained to

Mendez about Local 791's discriminatory treatment of her, the union retaliated against her by failing to

dispatch her for work while other less qualified male union members were more regularly dispatched.

## II.   Discussion.

### A.   Summary Judgment Standard.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-

moving party, there is no genuine issue of material fact which would preclude summary judgment as a

matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the

non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex

Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of

the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are

irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the non-moving party

fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton

Energy*, 68 F.3d at 1220.

This Court does not weigh the evidence or determine the truth of the matter, but only determines

whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  Thus, the record below is examined

only to resolve the question of whether there is a basis for dismissal.

### B.   Plaintiff Estrada's Gender Discrimination Claim Against Defendant
### Local 791.

By enacting Title VII, Congress did not intend to guarantee a job to each and every person

regardless of their qualifications.  *Griggs v. Duke Power Co.*, 401 U.S. 424, 429 (1971).  Instead, through

this legislation, Congress effectively proscribed any "artificial, arbitrary, and unnecessary barriers to

employment when the barriers operate invidiously to discriminate on the basis of racial or other

impermissible classification." *Id*. at 430-31.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court articulated a

three-part test for assessing the burdens and order of presentation of proof in a Title VII case alleging

discriminatory treatment.  First, the plaintiff has the burden of proving by the preponderance of the

evidence a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. Second, if the plaintiff succeeds in proving the prima facie case the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978).

### 1.   Plaintiff Estrada's Prima Facie Case.

In order for the Plaintiff to create a prima facie case three separate requirements must be met: (i) the Plaintiff must belong to a statutorily protected class, (ii) she must have applied for and was qualified for an available position, (iii) she must have been rejected despite her qualifications, and (iv) after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications. *McDonnell Douglas Corp.*, 411 U.S. at 802. However, the Ninth Circuit has consistently held that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," and "[a]t the summary judgment stage 'the requisite degree of proof . . . does not even need to rise to the level of a preponderance of the evidence.'" *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994) (internal citations omitted); *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, the Plaintiff is a female and is therefore a member of a protected class. The Plaintiff also completed an eight-hour flagging certification course required by the state, and subsequently obtained the necessary certification to be dispatched for flagging referrals. Furthermore, after the Plaintiff's comments to Mendez supporting Ms. Taylor, and after her filing of a complaint with the union regarding Lakeside employee, Sturm's conduct, the Plaintiff was dispatched for only two other short jobs, while male employees with comparable certifications allegedly enjoyed substantially more referrals. *See* First Amended Complaint for Discrimination, Retaliation, and Unpaid Wages, p. 3, 6 [Dkt. #31], *see also* Declaration of Anne-Marie E. Sargent, Exs. C-T [Dkts. #75, 76]. Thus, without making judgment on any of the Plaintiff's underlying claims, and solely for the purposes of summary judgment, the Plaintiff has

1   successfully established a prima facie case of gender discrimination against Local 791.

2      **2.   Defendant Local 791's Proffered Reason For Plaintiff Estrada's**

3          **Flagging Referrals.**

4      Next, the Defendant must rebut the presumption of discrimination by producing evidence that the

5   Plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Burdine*,

6   450 U.S. at 254.  To this end, "the defendant must clearly set forth, through the introduction of admissible

7   evidence, the reasons for the plaintiff's rejection." *Id*. at 255.  As the Supreme Court stated in *Sweeney*,

8   "the employer's burden is satisfied if he simply explains what he has done, or produc[es] evidence of

9   legitimate, nondiscriminatory reasons." *Sweeney*, 439 U.S. at 25.

10      The Defendant contends that the employees who received referrals were registered on the "A" and

11   "B" out-of-work lists, were present at the job call, and were "call backs" as previous employees, or were

12   name requests.  Moreover, the Defendant maintains that those referrals were filled in the usual course of

13   the hiring hall system and included both men and women. *See* Defendant Local 791's Motion for Partial

14   Summary Judgment Against Plaintiff Estrada, p. 5 [Dkt. #59].  This reason satisfies the employer's burden

15   of production here, and shifts the burden to the Plaintiff to raise a genuine issue of material fact as to

16   whether the Defendant's reason here is actually a pretext for discrimination.

17      **3.   Whether Defendant Local 791's Reasons for Not Dispatching Estrada**

18          **Are Pretextual.**

19      The Ninth Circuit has held that a plaintiff can show pretext either "(i) indirectly, by showing that

20   the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or

21   otherwise not believable, or (ii) directly, by showing that unlawful discrimination more likely motivated the

22   employer." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147 (2000) (quoting *Godwin v.*

23   *Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998)).  However, the Court must consider such

24   evidence *in toto*, considering both the direct and indirect evidence available. *Lyons*, 307 F.3d at 1113.

25   Additionally, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive

26   summary judgment." *Bergene v. Salt River Proj. Agr. Improv. & Power Dist*., 272 F.3d 1136, 1142 (9th

27   Cir. 2001).

28

Here, the Plaintiff has identified several items of evidence which allegedly demonstrate that the Defendant's proffered explanation is pretextual.  First, records filed by Local 791 with the EEOC indicate that there is a significant disparity in the proportion of women to men in the union's membership.  *See* Declaration of Anne-Marie Sargent, Ex. U [Dkt. #76].  Recently, in the 2005 case of *Obrey v. Johnson* the Court found that in a case where the plaintiff alleges that the employer has engaged in a "pattern or practice" of discrimination, "[s]tatistical data is relevant because it can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices."  *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005).  In that case, the Court admitted statistical evidence for the purpose of demonstrating that the Navy had engaged in a pattern of discriminatory hiring.  Similarly, here, it is possible that a jury might infer from the imbalance between men and women in the union's membership that the Defendant's referral scheme may have been discriminatory.

Second, when asked to explain the disparity in union membership, Mendez stated that when women would come into the hall he would often tell them that they would have to do extremely physically demanding jobs, such as jack hammering, and that when he did so they often decided not to sign up.  *See* Deposition of Manny Mendez, (attached as Ex. V to the Declaration of Anne-Marie Sargent), p. 107 [Dkt. #76].  However, such physically demanding jobs were not a requirement of union membership, and, in fact, many women performed other types of less physically demanding work.  *Id.* at 108-09.

Third, the Plaintiff points to evidence that Defendant Local 791 did not follow its own dispatch rules when making referrals to employers.  These rules prescribe that individuals are to be dispatched based upon whether they are on the "A", "B", "C", or "D" list, then in successive order as to where they are on the particular list, and then whether they are in attendance at the hall at the time that the dispatch occurs. Estrada alleges that Mendez's process for making referrals deviated from these guidelines.  In fact, she claims that Mendez dispatched males to employers who had requested them, even though they had not previously worked for the employer, and therefore should not have been eligible for dispatch to that employer.  *See* Declaration of Anne-Marie Sargent, Exs. C-T [Dkts. #75, 76].  Estrada also alleges that Mendez alerted certain employees to the availability of work at specific job calls on a preferential basis, which effectively allowed these individuals to avoid the requirement of attending the job call regularly, but, rather, to show up only when work was available.  *See* Declaration of Tina Allen, p. 4 [Dkt. #74]; *see also*

Declaration of Debbie Estrada, p. 4 [Dkt. #73].

These assertions are supported by the Declarations of two long-term male union members, Larry Martin and Alford Wakefield.  Specifically, in his Declaration Mr. Wakefield, a Local 791 union member for twenty-five years, states

> "[w]hen Manny Mendez was the business agent he brought all of his male friends from Reynolds into the union after the Reynolds plant shut down.  He put some of his friends directly on the A list and started dispatching them for work . . . I was at the hall one day in 2003 . . . when I overheard Mr. Mendez on the phone talking to an employer about a job.  I heard Mr. Mendez say, 'I have just the laborer you need.'  Mr. Mendez did not fill the job off the floor as he should have, but instead recommended an individual to the employer . . . I believe that dispatching for jobs in Local 791 has been done in a discriminatory manner for numerous years . . . I feel [the] business agents dispatched men and discriminated against the women in their dispatches." *See* Declaration of Alford Wakefield, p. 2-3 [Dkt. #83].

Mr. Martin stated similar allegations in his Declaration,

> "I believe that Manny Mendez and other business agents of Local 791 have been discriminatory in their dispatch procedures, and that Manny Mendez dispatches his male friends instead of following the rule of calling down the list or calling who is present at the job call . . . I have witnessed the business agent failing to cross men off the out-of-work list when they had been dispatched for work so that they advanced on the list even though they had been sent out for work." *See* Declaration of Larry Martin, p. 2 [Dkt. #81].

Such referral procedures bear no obvious or necessary connection to the guidelines for dispatch, originally prescribed by the Southwest Laborer's Agreement.  Thus, a reasonable trier of fact might be able to infer that Defendant Local 791 did not dispatch Plaintiff Estrada, who had the requisite flagging certification and attended job calls regularly, because of a discriminatory intent.

At the same time, however, the Plaintiff also points out that "[she knew] that Mendez breached several of the rules . . . because she herself was briefly the beneficiary of such breaches." *See* Plaintiff Estrada's Response to Defendant Local 791's Motion for Summary Judgment, p. 14 [Dkt. #70]. Consequently, it would also be difficult for this Court to conclude that the Defendant's referrals were discriminatory here, when the Plaintiff herself was at one point the beneficiary of such procedures. Nonetheless, although the reasons for the Plaintiff's diminished referrals present a close question, for purposes of summary judgment, the Plaintiff has raised a genuine issue of material fact, and may proceed to trial on this issue.

### C.    Plaintiff Estrada's Federal Gender Discrimination Claim Against Defendant Security Barricade.

Defendant Security Barricade has also moved for summary judgment against Plaintiff Estrada on her federal gender discrimination claim, brought under Title VII.  As with the Plaintiff's gender

discrimination claim against Defendant Local 791, the Plaintiff must first make out a prima facie case of discrimination. The first element of her prima facie case requires that the Plaintiff be a member of a statutorily protected class. Plaintiff Estrada is a female and is therefore undoubtedly a member of such a class. Next, the Plaintiff must have been qualified for an available position with the employer. This element is also likely satisfied since at the time she was employed on the Lakeside project Estrada had previously completed the required flagging certification course. Third, the Plaintiff must demonstrate that she was rejected despite her qualifications. After the Plaintiff expressed disinterest in Sturm's propositions, Jerry Welch of Security Barricade informed Estrada that her services as a flagger were no longer required on the project. *See* Declaration of Debbie Estrada, p. 13-14 [Dkt. #73]. Finally, the Plaintiff must show that after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications. Following Estrada's termination, other male employees, such as Kenny Pederson, with similar qualifications as Estrada returned to work for Security Barricade. *Id*. Thus, each of the elements of the Plaintiff's prima facie case are likely met here.

Next, the Defendant must present evidence of a legitimate and nondiscriminatory reason for the Plaintiff's termination. Through the Declarations of Roger Munson and Jerry Welch, the Defendants maintain that Plaintiff Estrada was terminated because the exact number of employees needed on a day-to-day basis is uncertain, she was not part of "the core group of employees" that Security Barricade regularly used on such a project, and, as such, she was only employed on an "as needed" basis. *See* Defendant Security Barricade's Motion for Summary Judgment, p. 7 [Dkt. #64]; *see also* Declaration of Roger Munson, p. 2 [Dkt. #66]; Declaration of Jerry Welch, p. 1-2 [Dkt. #67]. Under the *Sweeney* standard, this reason likely satisfies the employer's burden of production here.

Under the burden-shifting framework of *McDonnell Douglas Corp.*, the Plaintiff must next set forth evidence sufficient to show that this reason was merely a pretext for discrimination. Here, arguably, Defendant Security Barricade's reasons for the Plaintiff's termination were false and pretextual. The Plaintiff offers the following evidence to support this claim. First, immediately following his conversation with Sturm, during which Sturm was gesturing in the direction of Estrada, Welch informed Estrada that she should not come back to work. *See* Declaration of Debbie Estrada, p. 13-14 [Dkt. #73]. Second, when Estrada asked Welch why she was not supposed to come back, Welch told her that she was on "May Day,"

a term that had no meaning to Estrada, and which conflicts with the Defendant's proffered legitimate reason for the Plaintiff's termination. *Id.* Significantly, the Court in *Reeves v. Sanderson* reasoned that in such a situation, where the defendant offers false or conflicting explanations of the plaintiff's termination, the trier of fact should generally infer the ultimate act of discrimination. *Reeves*, 530 U.S. at 147. Third, the Plaintiff alleges that Security Barricade actually needed flaggers on the Lakeside job at the time that it was laying off Estrada. In fact, in her Declaration Jenny Johnson, a female member of Local 791, states that Welch had called her the same evening that he terminated Estrada, and mentioned that he "really needed flaggers on the project." *See* Declaration of Jenny Johnson, p. 1 [Dkt. #80]. Yet the Defendant claims that it had finished "the last big push on the job," and, thus, the Plaintiff's services as a flagger were no longer needed. *See* Defendant Security Barricade's Motion for Summary Judgment, p. 8 [Dkt. #64]. The parties give conflicting reasons for the Plaintiff's termination. There is sufficient evidence to raise a genuine issue of material fact as to whether Defendant Security Barricade's proffered reasons were pretextual.

       **D.**    **Plaintiff Estrada's State Gender Discrimination Claim Against Defendant Security Barricade.**

      The analysis of Plaintiff Estrada's state gender discrimination claim varies only slightly from her federal gender discrimination claim. Precisely, in order to set forth her prima facie case, the Plaintiff must also establish that she was replaced by a person of the opposite sex, or otherwise outside the protected group. *Domingo v. Boeing Employees' Credit Union*, 124 Wn. App. 71, 80 (2004). Here, the Plaintiff has presented evidence showing that a male union member, Kenny Pederson, was dispatched to the Lakeside job after Estrada, and should have been released from the job before her, but was nevertheless allowed to remain after Estrada was terminated. *See* Declaration of Debbie Estrada, p. 13-14 [Dkt. #73]. It therefore follows that the Plaintiff has likely satisfied the fourth element of her prima facie case of gender discrimination brought under RCW 49.60.180. Additionally, since Washington courts incorporate the federal standard of gender discrimination articulated in *McDonnell Douglas Corp.*, the Plaintiff has created a genuine issue of material fact under state law, as well. *Domingo*, 124 Wn. App. at 77.

E.      **Plaintiff Estrada's Retaliation Claim Against Defendant Local 791.**

Under *Porter v. California Dep't of Corr.*, 419 F.3d 885 (9th Cir. 2005) the analysis of the Plaintiff's retaliation claim roughly mirrors the analysis under her gender discrimination claim - there is a slight variation in making out the Plaintiff's prima facie case.  First, the Plaintiff must establish a prima facie case of retaliation by the employer Defendant.  *Porter*, 419 F.3d at 894.  Second, the Defendant must satisfy its burden by demonstrating a legitimate and nondiscriminatory reason for its actions.  *Id*.  Finally, the burden shifts back to the Plaintiff to submit evidence showing that the Defendant's proffered reason is merely a pretext for a retaliatory motive.  *Id*.

1.      **Plaintiff Estrada's Prima Facie Case of Retaliation.**

In order to establish a prima facie case, the Plaintiff must demonstrate that (i) she had engaged in protected activity; (ii) she was thereafter subjected by her employer to an adverse employment action; and (iii) a causal link existed between the protected activity and the adverse employment action.  *Id*.

The Ninth Circuit has held conclusively that one who makes a formal or informal complaint of discriminatory treatment engages in protected activity.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Further, a plaintiff who expresses an employment grievance on behalf of another engages in constitutionally protected speech.  *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004).  Here, the Plaintiff has arguably engaged in a significant amount of protected activity: first, on September 26, 2003, Estrada complained to Mendez and filed a grievance concerning Sturm's conduct while she was employed on the Lakeside construction project; second, in the spring of 2003, Estrada voiced her support to Mendez of Ms. Taylor's complaints regarding discriminatory treatment of female union members, and; third, in May 2004, Estrada filed charges of discrimination with the Equal Employment Opportunity Commission (the "EEOC").  Consequently, the first prong of the Plaintiff's prima facie case is satisfied here.

The Court in *Ray v. Henderson* set forth the standard for determining whether an employment action is adverse.  There, the Court found that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."  *Ray*, 217 F.3d at 1243.  Here, the Plaintiff alleges that following her support of Ms. Taylor her dispatches became more infrequent, even though there was a substantial amount of work available.  *See* Declaration of Debbie Estrada, p. 8

[Dkt. #73]. Similarly, after the Plaintiff complained to Mendez about Sturm's conduct she was dispatched only two other times to relatively short jobs. *See* Plaintiff Estrada's Response in Opposition to Defendant Local 791's Motion for Summary Judgment, p. 20 [Dkt. #70]. Finally, after the Plaintiff filed charges with the EEOC she was not dispatched again. *Id*. Because the Defendant's actions here are likely to alert other union employees of the consequences of engaging in conduct similar to Estrada's, and, thus, suppressing such protected activity, *Ray v. Henderson* dictates that the employer action must be classified as adverse.

Next, it is well-settled that the element of causation is "highly context-specific," and that temporal proximity provides a basis from which an inference can be drawn that a causal link existed between the protected activity and the adverse employment action. *Porter*, 419 F.3d at 895 (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997)); *Bell v. Clackamas County*, 341 F.3d 858, 865-66 (9th Cir. 2003). Here, a jury might reasonably infer that as a result of the timing between each of Estrada's complaints and her diminished referrals, the correlation between the two is at least noticeable, and, for purposes of summary judgment, enough to create an inference of a causal link.

### 2.      Defendant Local 791's Asserted Legitimate and Nondiscriminatory Reason.

The Defendant contends that Estrada's diminished referrals are a direct result of conducting the regular hiring hall system. As in the Plaintiff's gender discrimination claim, this reason satisfies the employer's burden of production here, and shifts the burden back to the Plaintiff to submit evidence showing that the Defendant's proffered reason is merely a pretext for a retaliatory motive.

### 3.      Whether Defendant Local 791's Articulated Reason is Pretextual.

A pretextual motive under a claim of retaliation may be shown by the same means as it is shown pursuant to a gender discrimination claim. Precisely, "pretext may be shown either (i) directly, by persuading the jury that a discriminatory motive more likely than not motivated the employer, or (ii) indirectly, by showing that the employer's proffered explanation is unworthy of credence." *Godwin*, 150 F.3d at 1220. Moreover, to establish pretext "very little" direct evidence of discriminatory motive is needed, but if circumstantial evidence is offered, such evidence must be "specific and substantial." *Id*. at 1222.

There appears to be two possibilities by which Plaintiff Estrada may establish a pretextual motive. First, membership records submitted by Local 791 with the EEOC indicate that it has far fewer women

than men. *See* Declaration of Anne-Marie Sargent, Ex. U [Dkt. #76]. A general principle, first expressed in *Diaz v. American Tel. & Tel.*, 752 F.2d 1356 (9th Cir. 1985), and later reiterated by the Court in *Obrey v. Johnson*, is that "statistical data . . . can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices . . . [and] such a discriminatory pattern can therefore create an inference of discriminatory intent . . ." *Diaz*, 752 F.2d at 1363.

Second, there is significant evidence that Local 791 did not follow its own dispatch rules when making referrals to employers. *See* Declaration of Anne-Marie Sargent, Exs. C-T [Dkts. #75, 76]; s*ee also* Declaration of Tina Allen, p. 4 [Dkt. #74]; Declaration of Debbie Estrada, p. 4 [Dkt. #73]; Declaration of Alford Wakefield, p. 2-3 [Dkt. #83]; Declaration of Larry Martin, p. 2 [Dkt. #81]. And as explained by the Court in *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1108 (11th Cir. 2001), an employer's violation of its own normal hiring procedure may be evidence of pretext. In that case, the employer disregarded all but one of the factors and qualifications generally taken into consideration when making employment decisions, and instead relied solely on a factor which was designed to create leeway for the promotion of people of a certain race. *Id.* In finding that the defendant's proffered nondiscriminatory reason was pretextual, the Court broadly endorsed this method of determining pretext. For the same reason, a jury might be able to infer that Defendant Local 791's reason for Estrada's decreased referrals was pretextual. Thus, based upon the foregoing, the Plaintiff has created a genuine issue of material fact as to whether the Defendant's referral procedures were a pretext for a retaliatory motive. The Plaintiff may proceed to trial on this claim.

### F.     Plaintiff Allen's Retaliation Claim Against Defendant Local 791.

Defendant Local 791 also moves for partial summary judgment against Plaintiff Allen on her retaliation claim. The threshold issue to be examined in this claim is whether the Plaintiff has established a prima facie case of retaliation. The Plaintiff's filing of a grievance with the union, following her dispatch to employer Max J. Kuney, along with her formal charge with the EEOC on February 7, 2005, constitute protected activity. Indeed, the Ninth Circuit in *Ray v. Henderson* recently held that such formal or informal complaints are protected activity. *Ray*, 217 F.3d. at 1240. Furthermore, after Allen presented her grievance to Mendez she was not dispatched to any other jobs, despite her seniority on the "D" list. Also under *Ray*, this action constitutes an "adverse employment action" on behalf of Defendant Local 791, and

satisfies the second element of the Plaintiff's prima facie case here. *Id.* at 1243. The third element is also likely met when considering the temporal proximity between Allen's protected activity and Local 791's failure to dispatch her. This was the reasoning in *Bell v. Clackamas County,* where the Court found that the proximity in time between the plaintiff's complaints and the alleged adverse employment actions provided strong circumstantial evidence of retaliation. *Bell*, 341 F.3d at 866. Thus, a reasonable jury might determine that the Plaintiff has established a prima facie case of retaliation here.

Next, Local 791 asserts that Allen's stagnant referrals are a direct result of conducting the hiring hall system. Again, as in Plaintiff Estrada's retaliation claim, this likely meets the requisite legitimate and nondiscriminatory reason here.

Finally, also for the same reasons given in Plaintiff Estrada's showing of a pretextual motive under her retaliation claim,[1] as well as the fact that Allen was at the top of her dispatch list at the time she filed her grievance, she attended dispatch regularly, and she was never referred to an employer following her complaint, Plaintiff Allen has created as genuine issue of material fact as to whether the Defendant's articulated reason here is pretextual for a retaliatory motive.

## G.    Plaintiff Estrada's Federal Retaliation Claim Against Defendant Security Barricade.

Plaintiff Estrada's prima facie case of retaliation against Defendant Security Barricade rests on the same principles as do her claims of retaliation against Local 791. After Estrada was confronted by Sturm on the afternoon of September 25, 2003, she made a complaint with Mendez of Local 791 the following day. *See* Declaration of Debbie Estrada, p. 14 [Dkt. #73]. Furthermore, Estrada also communicated her concerns by telephone to Jerry Welch of Security Barricade on September 26, 2003. *Id.* These complaints amount to constitutionally protected activity, and therefore satisfy the requirements of the first prong of the Plaintiff's prima facie case. After the Plaintiff made these complaints she was not invited to work for Security Barricade again. *Id.* at 15. Moreover, the temporal proximity rationale provided in *Porter v. California Dep't of Corr.* establishes the causal link between the protected activity and the adverse

---

[1]That is, (i) there is a significant disparity between the ratio of men to women in the composition of Defendant Local 791's membership, and (ii) the Defendant's dispatch procedures varied significantly from the prescribed guidelines under the Southwest Laborer's Agreement.

employment action here. *Porter*, 419 F.3d at 895. That is, immediately after the Plaintiff voiced her concerns her worked ceased and Welch never called her again to work on the Lakeside project. Thus, a reasonable jury could conclude that the Plaintiff has established a prima facie case of retaliation.

The Defendant's legitimate and nondiscriminatory reason for the Plaintiff's termination is that she was not rehired because the project was winding down and there was no work available. *See* Defendant Security Barricade's Motion for Summary Judgment, p. 15 [Dkt. #64]. This reason satisfies the Defendant's showing of a legitimate reason here.

Finally, for the reasons mentioned in Estrada's gender discrimination claim against Security Barricade - that Security Barricade has offered inconsistent explanations for her termination - a reasonable jury could determine that the Defendant's reason for terminating Estrada was pretextual in motive.

> **H.    Plaintiff Estrada's State Retaliation Claim Against Defendant**
> **Security Barricade.**

Under RCW 49.60.210(1), it is an unfair practice for an employer to discharge, expel, or otherwise discriminate against any person because he or she has opposed any unlawful practices, or because he or she has filed a charge, testified, or assisted in any proceeding related to an unlawful practice. In order to maintain an action here the Plaintiff must establish three separate elements: (i) that she engaged in a statutorily protected activity, (ii) that an adverse employment action was taken, and (iii) that the statutorily protected activity was a substantial factor in the employer's adverse employment decision. *Schonauer v. DCR Entertainment, Inc.*, 79 Wn. App. 808, 827 (1995).

For the same reasons given in the Plaintiff's federal retaliation claim, each of the elements of this cause of action are likely met. Significantly, the third element incorporates the much more broad "substantial factor" test for the employer's adverse employment decision, instead of the narrower "causal link" factor. *Allison v. Seattle Housing Authority*, 118 Wn.2d 79, 94 (1991). Consequently, since this Court has already determined that a reasonable jury could conclude that a causal link existed between the protected activity and the adverse employment action, so too could a reasonable jury conclude that the less restrictive "substantial factor" test was also likely met.

1

2

      **I.**      **Plaintiff Estrada's Federal and State Sexual Harassment Claims Against Security Barricade.**

3      Sexual harassment is a distinct element of discrimination prohibited by Title VII and the

4  Washington Law Against Discrimination, RCW 49.60.180(3).  As originally prescribed by the EEOC

5  Guidelines, and reiterated by the Court in the 1986 case of *Meritor Savings Bank v. Vinson, et. al.*, 477

6  U.S. 57, 65 (1986), there are generally two sorts of sexual harassment: *quid pro quo* and hostile work

7  environment.  The mechanism for allocating the burden of production in such claims is the same framework

8  used in Title VII gender discrimination and retaliation claims, the *McDonnell Douglas Corp.* burden-

9  shifting analysis.

10      **1.**      **Plaintiff Estrada's *Quid Pro Quo* Claim.**

11      "In order to establish a prima facie case of *quid pro quo* sexual harassment, a complainant must

12  show that an individual 'explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job

13  detriment, upon an employee's acceptance of sexual conduct.'" *Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th

14  Cir. 1995) (quoting *Nichols v. Frank*, 42 F.3d 503, 511 (9th Cir. 1994)).  In *Dominguez-Curry v. Nevada

15  Transp. Dept.*, 424 F.3d 1027 (9th Cir. 2005), the Court distinguished the situation where an agent who

16  uttered a discriminatory remark but was not involved in the employment decision, from the situation where

17  an agent's biased remarks actually influenced the Defendant in making her employment decision.

18  Specifically, the Court held that "[if] the person who exhibited discriminatory animus influenced or

19  participated in the decisionmaking process, a reasonable factfinder could conclude that the animus affected

20  the employment decision." *Dominguez-Curry*, 424 F.3d at 1039.

21      Here, Estrada alleges that on two occasions immediately preceding Sturm's confrontation with her,

22  and prior to Security Barricade's termination of Estrada, Sturm requested that she have drinks with him,

23  suggested that she could move up in her work if she did so, and expressed anger when Estrada responded

24  negatively to his propositions.  *See* Plaintiff Estrada's Response to Defendant Security Barricade's Motion

25  for Summary Judgment, p. 5 [Dkt. #72].  Furthermore, Estrada alleges that she observed Sturm talking

26  with Welch in an angry and animated manner, and gesturing towards her after the confrontation between

27  her and Sturm.  *Id.*  Additionally, Welch, the primary representative of Security Barricade on the Lakeside

28  project, told Estrada and several other women that they should do what Sturm told them, and that they

should "make Dick happy," as all of their lives would be a lot easier if they did.  *Id.* at 6; *see also* Declaration of Debbie Estrada, p. 16 [Dkt. #73].  Thus, the most likely source of influence in Welch's decision to terminate Estrada was Sturm.  And under the logic of *Dominguez-Curry*, evidence of Sturm's discriminatory remarks to Welch is sufficient to permit a jury to find that a discriminatory motive affected Estrada's termination here, even if Welch held no such biases.

Next, the Defendant contends that the Plaintiff was terminated because the project was nearing completion and the large crews on which the Plaintiff worked were no longer necessary.  *See* Defendant Security Barricade's Motion for Summary Judgment, p. 11 [Dkt. #64].  This reason is sufficient to establish the legitimate nondiscriminatory reason here.  Yet the Plaintiff's evidence supporting her prima facie case here is also sufficient to establish the requisite showing of pretext, as well.  *Dominguez-Curry*, 424 F.3d at 1040.  Thus, the Plaintiff has created a genuine issue of material fact as to these elements.

### 2.   Plaintiff Estrada's Hostile Work Environment Claim.

A hostile work environment based on gender, which affects the terms and conditions of employment, is a form of discrimination prohibited by both state and federal law.  Thus, because the Washington Law Against Discrimination parallels that of Title VII, it is appropriate to consider the Plaintiff's state and federal claims together.  *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2001).

In order for the Plaintiff's hostile-environment claim to survive summary judgment, the Plaintiff must show that: (i) she was subjected to verbal or physical conduct of a sexual nature, (ii) the conduct was unwelcome, and (iii) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  *Porter*, 419 F.3d at 892.  As suggested by the Ninth Circuit in both *Porter v. California Dep't of Corr.* and *Brooks v. City of San Mateo*, "a hostile environment may result from a single instance of sexual harassment if the harassing conduct is sufficiently severe . . . few types of harassing conduct are more extreme than thrusting explicit sexual propositions toward an employee and then executing reprisals against her for resisting the advances."  *Id.*; 229 F.3d 917, 925-27 (9th Cir. 2000).

Here, Estrada alleges that Sturm had a reputation as a womanizer, hiring or advancing women for sexual favors, and had a relationship with several of the female flaggers on the Lakeside project.  *See*

Declaration of Debbie Estrada, p. 11 [Dkt. #73]; *see also* Plaintiff Estrada's Response to Defendant Security Barricade's Motion for Summary Judgment, p. 2 [Dkt. #72]; Declaration of Larry Martin, p. 3 [Dkt. #81].  As stated above, during the course of Estrada's employment on the Lakeside project Sturm repeatedly propositioned her, to which Estrada responded, "[y]ou know Dick, I know where this is going, and I'm not interested in any kind of relationship or anything, I'm here to work and that's it."  *See* Declaration of Debbie Estrada, p. 11 [Dkt. #73].  Several days later, an altercation occurred between Estrada and Sturm, which Estrada alleges was so severe that one motorist even offered to call the police to assist Estrada.  *Id.* at 12.  As such, a reasonable jury might possibly determine that the Plaintiff has set forth a hostile-environment claim here.

The prevailing question, however, is whether Security Barricade is vicariously liable for the conduct of Sturm.  According to the Ninth Circuit in *Little v. Windermere Relocation, Inc.*, "employers are liable for harassing conduct by non-employees 'where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct.'"  *Little*, 301 F.3d at 968 (quoting *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997)).  Here, Estrada alleges that Security Barricade did nothing to remedy the harassment by Sturm.  Precisely, Estrada alleges that Welch knew of Sturm's conduct because Welch had been on the radio with Sturm at the time Sturm was yelling at Estrada.  Moreover, Estrada alleges that although Security Barricade personnel were advised of her complaint, they did nothing to investigate it, nor did they take any corrective actions.  *See* Plaintiff Estrada's Response to Defendant Security Barricade's Motion for Summary Judgment, p. 12 [Dkt. #72].  Consequently, because Security Barricade allegedly was aware of Sturm's conduct following Estrada's complaint, at the very latest, and likely much earlier,[2] and it failed to take any action to correct this conduct, a reasonable jury might be able to determine that liability would attach here.  Thus, the Plaintiff has created a genuine issue of material fact and may proceed to trial on this claim.

---

[2]Indeed, in his Declaration, Larry Martin states that because of the history Sturm had with various women on the jobs, "[e]veryone who worked for Lakeside or with Lakeside was aware of Mr. Sturm's behavior on these jobs, including Mr. Mendez."  *See* Declaration of Larry Martin, p. 3 [Dkt. #81].

**J.     Plaintiff Estrada's Sexual Harassment Claim Against Local 791.**

Pursuant to Defendant Local 791's Motion for Summary Judgment, Local 791 moves to dismiss Plaintiff Estrada's sexual harassment claim against them.  Since the Plaintiff has not responded to this averment, under Local Rule 7 the Court may consider this as an admission that the motion has merit.  The Plaintiff's claim on this matter is hereby DISMISSED.

**K.     Plaintiff Estrada's Claim for Unpaid Wages Against Defendant Security Barricade.**

The Plaintiff's claim for unpaid wages has two components: first, whether there is a material issue as to the underlying wage obligation, and, second, whether there is a genuine issue of material fact that the employer's failure to pay the Plaintiff's wages was "willful."

The Plaintiff alleges that she was not paid for two of the days that she worked for Security Barricade.  Specifically, the Plaintiff claims that she noted on her calendar during the week of September 1, 2003 that she was not paid for one of the days that week, and she informed Welch of this fact.  *See* Declaration of Debbie Estrada, p. 15 [Dkt. #73].  Additionally, the Plaintiff claims that she also worked for three days during her last week of employment for Security, the week of September 22, but was only paid for two days.  *Id.*  Defendant Security Barricade, on the other hand, asserts that its records reflect that the Plaintiff was paid for each of the days that she worked.  *See* Declaration of Jerry Welch, p. 2 [Dkt. #67]. Accordingly, a genuine issue of material fact exists as to whether the Plaintiff was or was not paid for the two days in question.

The next issue involves the Plaintiff's claim of "willfulness," therefore allowing the question of double damages to proceed to trial.  RCW 49.52.050 provides an avenue of relief for an employee whose employer "wilfully" withheld part of the employee's wages.  RCW 49.52.070 creates civil liability for violations of RCW 49.52.050, including double damages, costs, and attorney's fees.  *Pope v. Univ. of Wash.*, 121 Wn.2d 479, 489 (1993).  The Court in *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050 (9th Cir. 1995) concluded that "the nonpayment must be the result of knowing and intentional action by the employer, rather than of a bona fide dispute as to the obligation of payment . . . [d]ismissal of such claims on summary judgment is permitted when there is no evidence that the employer acted wilfully."

Here, the Plaintiff notes that "Welch kept time records on a yellow pad, with notes scribbled all over it, and which appeared to Estrada to be barely legible." *See* Plaintiff Estrada's Response to Defendant Security Barricade's Motion for Summary Judgment, p. 22 [Dkt. #72].  It is likely that the Defendant's failure to pay Estrada for the days which she claimed that she had worked was a direct result of Welch's "barely legible yellow pad," and, thus, a result of carelessness.  As such, this Court finds that the Defendant's failure to pay the Plaintiff here did not involve "wilfulness" for purposes of double damages under either RCW 49.52.050 or RCW 49.52.070.

**L.    Defendant Local 791's Motion to Strike Declarations Re. Plaintiff Estrada and Plaintiff Allen.**

Defendant Local 791 has submitted two motions to strike [Dkts. # 85, 91] certain declarations submitted in support of both Plaintiff Estrada's Response to Defendant Local 791's Motion for Summary Judgment, as well as Plaintiff Allen's Response to Defendant Local 791's Motion for Summary Judgment, on the basis of fraud.  Those motions are DENIED.

**M.    Defendant Local 791's Motion to File a Reply Brief.**

Defendant Local 791 requests the right to file a reply brief. [Dkt. #102].  This motion is DENIED.

///

///

///

///

///

///

1    In sum, for the reasons set forth above, Defendant Local 791's Motion for Partial Summary

2    Judgment against Plaintiff Debbie Estrada [Dkt. #59], as well as Defendant Local 791's Motion for Partial

3    Summary Judgment against Plaintiff Tina Allen [Dkt. #62], are DENIED in part, and GRANTED as to

4    Plaintiff Estrada's claim of sexual harassment against Defendant Local 791[3].  Additionally, Defendant

5    Security Barricade's Motion for Summary Judgment against Plaintiff Debbie Estrada [Dkt. #64], is

6    DENIED in part, and GRANTED solely as to Plaintiff Estrada's claim of "wilfulness" with respect unpaid

7    wages.

8         IT IS SO ORDERED.

9         DATED this 21st day of March, 2006.

10

11

12

13                                          _____

14                                          RONALD B. LEIGHTON
                                            UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24   _____

25   [3]The Court has reviewed both the Defendant and the Plaintiff's letters dated, March 13 and March 14,

26   2006, respectively, and concludes that although the process by which the Plaintiff's counsel obtained the

27   Declaration of Alford Wakefield deviated from standard practice, the discrepancy between the handwritten

28   statement and the Declaration is in form rather than in substance, and, therefore, does not alter the findings

     of this Court.

     ORDER
     Page - 21